# Murphy *v.* Green.

### *Bill in Equity to Enjoin Action of Ejectment and Remove a Cloud.*

1. *Bill to enjoin ejectment; fraud; burden of proof.*—The com-
plainant in a bill to enjoin an action of ejectment brought by
the purchaser under execution against complainant's grant-
or, has the burden of proving the *bona fides* of the consider-
ation for the deed obtained by him from such grantor when
the bill alleges that the "consideration expressed in said
deed is the true amount he (complainant) paid for said
land," and the answer denies the *bona fides* of the transaction,
and avers that the conveyance to complainant was executed
fraudulently.

2. *Same; same; answer; necessity for cross bill.*—When a bill
seeks to enjoin an action of ejectment brought by the pur-
chaser under execution against complainant's grantor, and al-
leges that the complainant has a deed from such grantor
which expresses the true consideration paid by complainant
for the land described in the deed and the answer denied the
*bona fides* of the transaction and avers that it was fraudu-
lent, a cross bill is unnecessary to present the question of
fraud *vel non,* the same being sufficiently raised by the bill
and the answer.

3. *Same; same; case at bar.*—Upon a bill filed to enjoin an action

[Murphy v. Green.]

of ejectment and remove a cloud, wherein it is alleged that
the consideration expressed in the deed to complainant was
the true amount paid by him for the land, and the answer of
the respondent who was a judgment creditor of complain-
ant's grantor claiming title by virtue of a sheriff's deed under
execution upon his said judgment, denied the *bona fides* of
the consideration, and averred that it was simulated, it ap-
peared that complainant was a brother of his grantor, resided
with her as a member of her family, and was employed by
her in a milling business conducted upon the land in con-
troversy that the consideration expressed in said deed was
$1,787.50 cash in hand paid; that complainant was a man of
no means; that he claimed to have paid the consideration by
cutting and disposing of the timber on said land, but that the
whole amount of timber so cut and disposed of after deducting
expenses fell far short of the consideration expressed in the
deed, that the deed purported to have been executed July 15th,
1892, was not acknowldged until March 20th, 1893, nor record-
ed until December 12th, 1893, which was not a great while be-
fore respondent obtained his judgment; that said grantor
continued to reside upon the land after the date of said al-
leged deed, held herself out as the owner thereof, and rented
out the same until 1894, claiming the right to collect the
rents until the purchase money was paid, although her ac-
count showed the payment to have been made in 1892; that
the debt of respondent existed at the date of said alleged deed
as well as various other debts which were pressing, placing
said grantor in an embarrassed financial condition; that com-
plainant knew of the existence of this indebtedness; that he
used and occupied the land in the same manner after said
deed as before; that there were material discrepancies in the
testimony of complainant's witnesses, and at least one state-
ment was positively contradicted by a disinterested witness;
that the land was rented by said grantor in 1894, to one
Thames, with whom complainant then boarded, but nothing
was said by either about the rent, and that in 1893, when an
execution was presented to said grantor she said she had 1,500
acres of land fixed so no one could touch it. *Held*: That the
proof failed to show the *bona fides* of the transaction, and
that complainant was not entitled to relief.

4. *Fraudulent conveyance; deed of married woman without joinder
of husband; subsequent valid execution.*—Where a married
woman executes a deed without the concurrence of her hus-
band in the manner prescribed by law (Code, § 2528), with
intent to hinder, delay and defraud creditors, the subsequent
execution of a deed by her and her husband in accordance

with the statute for the purpose of curing the defects, if any, in the original deed, vests no title whatever in the grantee as against creditors who were defrauded in the original transaction.

APPEAL from the Chancery Court of Conecuh.

Heard before the Hon. W. L. PARKS.

The bill in this case was filed by the appellee for the purpose of enjoining an action of ejectment instituted by appellant and to remove as a cloud upon complainant's title the deed under which appellant claimed title. It was averred and shown that appellee claimed under a deed executed by Mrs. Travis on July 15, 1892, without being joined therein by her husband; that complainant went into possession under said deed claiming ownership, and that in 1895 another deed was executed to him by said grantor and her husband to cure the defects in the former deed. Respondent claimed title under sheriff's deed under an execution sale on a judgment recovered by him against Mrs. Travis, said sale having taken place on the 12th day of August, 1895. The other material facts are sufficiently stated in the opinion. Upon the hearing the chancellor rendered a decree granting the relief prayed for. From this decree respondent appeals, and assigns the same as error.

J. F. JONES and J. M. CHILTON, for appellant.

STALLWORTH & BURNETT, G. R. FARNHAM and LOMAX, CRUM & WEIL, contra.

DOWDELL, J.—The purpose of the bill filed by the complainant, J. J. Green, who is the appellee here, was to enjoin an action of ejectment commenced by the appellant, Murphy, in the circuit court of Conecuh county for the recovery of certain lands described in the bill and to remove the cloud from the alleged title of the complainant to said lands. It is alleged in the second paragraph of the bill, "that he (complainant) purchased and paid for said lands in good faith, and was put into the possession thereof immediately after

he made such purchase, and has remained in the possession ever since that time until the present, using and claiming the same as his own openly and notoriously; and orator further alleges that the consideration expressed in said deed is the true amount he paid for said land, and the same was at the time of said purchase the fair market value thereof."

It is further shown by the bill that the respondent, Murphy, claims title under a sheriff's deed under an execution sale on a judgment recovered by said respondent against Mary E. Travis, complainant's grantor.

The special prayer of the bill is for an injunction against said action of ejectment and for a cancellation of said sheriff's deed, and also that complainant "may be confirmed and established in his title to said lands."

The answer of the respondent Murphy expressly denies the alleged *bona fides* of the transaction between the grantor, Mary E. Travis, and the complainant, J. J. Green, in the sale and purchase of said land, and avers that the same was fraudulent and done with the purpose and intent to hinder, delay and defraud the creditors of said Mary E. Travis, and especially the said respondent Murphy, and also avers that the alleged consideration paid for said land was simulated and fictitious, and, in fact, that no consideration was paid.

Under the averments in this bill, and the denials in the answer, the *bona fides* of the transaction, as to the sale and purchase of the lands, between the complainant and the said Mary E. Travis, became a material and vital issue in the case, dispensing with any necessity on the part of the respondent Murphy of raising and presenting the same by a cross-bill, and the assignment of error on the decree rendered on the facts properly presents for review and consideration the correctness of the chancellor's findings upon the evidence. It is manifest, under the issues presented by the pleading, if the transaction of the sale of said land by Mrs. Travis to the complainant was the result of a purpose and intent on the part of Mrs.

Travis to defraud her creditors, and wanting in the *bona fides* alleged in the bill, the bill would be without equity; and we think there can be no doubt, under the bill as framed and the denials and averments in the answer, that the burden of proof as to the alleged *bona fides* of the transaction of sale rests upon the complainant.

The facts show that the complainant Green is a brother of his grantor, Mary E. Travis, and that at the time of the alleged sale of the lands and for some time previous thereto, he was and had been in the employment of his said sister in the lumber-milling business and resided with her as a member of her family.

The recited consideration of the deed of July 15th, 1892, from Mary E. Travis to Joel J. Green, was $1,787.50, cash in hand paid. At the date of the execution of this deed Mary E. Travis was indebted to the respondent Murphy in the sum of $550 on a contract made in September, 1891. Besides this, she was also indebted to a number of other parties, merchants in Mobile and Atlanta, from whom she had been buying supplies for a country store run in connection with the lumber-milling business which she had been carrying on. These creditors were pressing their claims, and if she were not at that time in failing circumstances, she was very greatly embarrassed financially. The complainant Green, her brother, knew of this indebtedness. Green was a man of no property, but it is claimed that he paid the recited consideration of $1,787.50 out of the proceeds of the sale of lumber cut and marketed by him from the timber on the lands in question. To sustain this, he relies mainly upon the testimony of himself, and that of Mary E. Travis and her husband, J. C. Travis, both of whom were made parties to the bill and who suffered a decree *pro confesso* to be taken against them on the averments in the bill. It is shown by the testimony that in the period covering the time in which it is claimed that he paid for the land out of the proceeds of the sale of lumber cut and marketed by him, he in fact cut and marketed somewhere be-

tween thirteen and fourteen hundred sticks of timber, which, after deducting the expense of cutting, hauling, sawing and rafting to market, netted a balance far short of the recited consideration in the deed. It is claimed by Green that he negotiated for the purchase of the land in December, 1891, and immediately went into possession of the same under such purchase. The testimony of J. C. Travis was that he went into possession in December, 1892. The facts show that Mrs. Travis and her husband continued to reside on the land, and the only acts of ownership exercised by Green indicative of a change of possession was that of cutting timber from these lands, sawing it and rafting it to market—the very thing which he had been engaged in doing as an employe of Mrs. Travis. The deed of July 15th, 1892, was not acknowledged until March 20th, 1893, and was not recorded until December 12th, 1893. This was not a great while before respondent Murphy obtained his judgment, and as Murphy had been pressing his claim, it is not at all improbable that the anticipation of a suit by Murphy against Mrs. Travis caused the deed to go to record. During the time within which Green claims to have paid for the land out of the proceeds of the sale of lumber cut from the land, it is shown by the correspondence of Mrs. Travis with her creditors in Mobile and Atlanta that she was still holding herself out as the proprietor of the entire milling business. It is also shown by the evidence that as late as the year 1894 she rented out a portion of this land, taking the rent note payable to herself. She says that she and her husband were at this time controlling the land under a power of attorney from her brother, the said Green, to her husband, J. C. Travis, though she never saw the power of attorney, and in fact no power of attorney was ever introduced in evidence, nor was it ever mentioned by Green or J. C. Travis, both of whom testified. Again, it is shown that she gave Mark Travis and Green credit on a note and mortgage executed by them to her for the purchase of the saw-mill and teams, for the amount of the taxes paid by them on the lands for 1894. This,

however, she denies, but it is shown by the testimony of Mark Travis, a disinterested witness. The evidence of erasure unexplained made by her in the current account which she kept with said J. J. Green in relation to the milling business of 1892-3 is another very suspicious circumstance in the case. Mr. Travis, her husband, swears that Green paid as a part of the purchase money a debt due by Mrs. Travis to Farnham & Crum. It is not contended that she owed this firm more than one debt. Her husband says that his recollection is that it was $180, but Mark Travis, a step-son of Mrs. Travis, says it was $124, and that it was not paid on the purchase money of the land, but on the purchase money of the mill purchased by himself and Green from Mrs. Travis. In 1894 she rented her homestead and all other lands to one Thames, taking one note to herself for all the rent. She sued Thames for a balance on this note in her own name and recovered a judgment and got the money. Thames testifies that at the time of the renting, she gave him the refusal for 1895. Mrs. Travis admits that she received all the rents until 1895, but says she gave J. J. Green receipts for it, as she was entitled to the rents until the purchase money was paid, yet her account current which she offered in evidence showed that all the purchase money was paid in 1892, and she testifies herself that the notes for the balance of the purchase money for the land were paid right soon afterwards, not later than 1893. At the time Thames rented the land from Mrs. Travis, complainant Green was boarding with Thames, yet nothing was ever said to him about the rent. One McCrary testified that he had an execution against Mrs. Travis in 1893, and that when he went to her for the purpose of collecting the money on the execution she informed him that she had no money, and he then stated to her that he understood she had 1,500 acres of land, to which she replied: "Oh, I have got that fixed so no one can touch it." This, however, she denies.

There are other circumstances shown in evidence, besides those which we have mentioned, which, we think,

go very strongly to the impeachment of the *bona fides* of the transaction between Mrs. Travis and the complainant Green. The evidence, when taken as a whole, falls far short of that measure of proof requisite to support the alleged good faith of the transaction as to the sale of the land by Mrs. Travis to the complainant Green. It is anything but satisfactory, and by no means clear that the recited consideration of $1,787.50 was ever paid.

If the transaction between Mrs. Travis and J. J. Green in regard to the sale of the land originated in an attempt to hinder, delay or defraud the creditors of Mrs. Travis, then it is manifest that the complainant Green could not possibly take any benefit or right under the second deed executed by Mrs. Travis and joined in by her husband in 1895, which said latter deed, it is alleged, was executed to cure an imperfection in the first deed resulting from a failure of the husband to join in said first conveyance. There are other questions in the case argued by appellant's counsel, which we think unnecessary to notice, since the case may be finally determined upon the facts.

We feel no hesitancy in saying that upon a careful consideration of the evidence, the proof is altogether wanting in that clear and convincing character necessary to sustain the *bona fides* of the transaction. We therefore feel constrained, upon the facts in the case, to reverse the decree of the chancellor, and to here enter a decree dismissing the complainant's bill.

Reversed and rendered.